UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DEAN A. CARMEN,<br><br>                    Plaintiff,<br><br>v.<br><br>BREVILLE USA, INC., f/k/a METRO/THEBE, INC. (d/b/a HWI USA), a California corporation, BREVILLE HOLDINGS USA, INC., a California corporation, BREVILLE GROUP LIMITED, a foreign business entity, BREVILLE PTY LIMITED, a foreign business entity, BREVILLE INTERNATIONAL LIMITED, a foreign business entity, and BED BATH & BEYOND, INC., a New York corporation,<br><br>                    Defendants. | Case No. 1:15-cv-00117-EJL-CWD<br><br>**REPORT AND RECOMMENDATION RE: DKT. 64**<br><br>**ORDER RE: DKT. 79** |

**INTRODUCTION**

Before the Court is the motion for summary judgment filed on December 19,

2017, by Defendants Breville USA, Inc. and Breville Holdings USA, Inc. (collectively

"Breville"). Plaintiff Dean Carmen, who has been proceeding pro se in this matter since

November 21, 2017, was provided with notice regarding the requirements for responding

**REPORT AND RECOMMENDATION  - 1**

to the summary judgment motion. Since then, the Court conducted a telephonic status conference on April 12, 2018, and entered an Amended Case Management Order. (Dkt. 63.)[1] In its order, the Court noted the pending motion, and provided Carmen until April 30, 2018, to file a response. Absent a response, the Court informed Carmen it would consider the motion under advisement, and issue an appropriate order.

Carmen did not file a response, and instead emailed the Court on May 1, 2018, requesting an extension of time to respond to the motion. (Dkt. 79.) On May 2, 2018, Carmen again emailed the Court with a document purporting to be responsive to the motion for summary judgment. The Court elected to treat the correspondence and the attachment as Carmen's response to the motion for summary judgment. (Dkt. 80.)

The Court may not grant summary judgment by default without considering whether the movant met its burden of demonstrating any absence of a genuine issue for trial. *See Marshall v. Gates*, 44 F.3d 722, 725 (9th Cir. 1995) (summary judgment may not be granted simply because opposing party violated a local rule, if movant did not meet burden of demonstrating absence of genuine issue for trial). Therefore, the Court will evaluate the motion for summary judgment on the merits. Based upon a review of the

---

[1] Defendant Bed Bath & Beyond, Inc. is the only other party to have been served and who has appeared. (Dkt. 20.) Bed Bath & Beyond did not separately file a motion for summary judgment. Foreign Defendants Breville International, Ltd. and Breville Group Ltd. have never been served with a copy of the summons and complaint. Defendant Breville Pty Limited was dismissed as a party. (Dkt. 49.)

**REPORT AND RECOMMENDATION - 2**

record, the Court will recommend that summary judgment be granted to Breville on all claims asserted against it in the Second Amended Complaint.[2]

## MOTION FOR EXTENSION

Before turning to the motion for summary judgment, however, the Court must first address Carmen's request for an extension of time to respond. He cites his lack of familiarity with the law as the reason he requires more time. However, this lawsuit has been pending since April 1, 2015. (Dkt. 1.) The motion for summary judgment was filed on December 19, 2017. The Court instructed Carmen to provide a response to the motion on several occasions. (Dkt. 68, 76, 77.) The Court has accommodated Carmen's requests to continue several scheduled status conferences. (Dkt. 67; 68, 70, 71, 72, 76.) The Court has provided sufficient time for Carmen to locate counsel to represent him, and to respond to the pending motion for summary judgment.

Pro se litigants are subject to the same rules of procedure, and must adhere to the orders of the Court, just like litigants who have counsel. *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987). At this juncture, in order to secure the just, speedy, and inexpensive determination of this action, the Court deems the motion for summary judgment ripe for its consideration. Fed. Rule Civ. P. 1. Based upon the length of the delay and the impact it has had on these three-year-old proceedings, the resulting prejudice to Breville from the

---

[2] the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, the motion will be decided on the record before the Court without oral argument. Dist. Idaho L. Rule 7.1(d).

**REPORT AND RECOMMENDATION  - 3**

delay, and a review of the reason for requesting another extension, the Court finds

Carmen has not shown excusable neglect. Fed. Rule Civ. P. 6(b)(1)(B); *Briones v.*

*Riviera Hotel & Casino*, 116 F.3d 379, 381 (9th Cir. 1997) (instructing the court to

consider the danger of prejudice, the length of the delay and its potential impact on

judicial proceedings, the reason for the delay, and whether the movant acted in good

faith.)[3]

The Court therefore **DENIES** the motion for extension.

## FACTS

Breville is in the business of designing, engineering, manufacturing, marketing,

distributing and selling houseware products and electrical espresso makers. On January

26, 2013, Carmen purchased a Breville 800ESXL/B1225 model espresso maker from a

Bed, Bath & Beyond ("BB&B") store in Boise, Idaho. Carmen had previously owned two

other Espresso Makers made by a different manufacturer for the twelve years prior to

purchasing the Breville Espresso Maker. Depo. of Carmen at 209. (Dkt. 64-5 at 53.) On

February 9, 2013, Carmen returned the espresso maker to BB&B because it failed to heat.

BB&B did not have a new Breville 800ESXL/B1225 model espresso maker that had not

been removed from its box/packaging and available to exchange. BB&B did have a

display model of the Breville 800ESXL/B12251 model espresso maker available to

---

[3] On motion made after the time for responding has expired, the party who failed to act must show excusable neglect, not the more lenient good cause standard in Rule 6(b)(1)(A) applicable to a timely motion for extension.

**REPORT AND RECOMMENDATION  - 4**

exchange. Carmen exchanged the espresso maker that he originally purchased for the display model (the "Espresso Maker").

Carmen kept the accessories and operating manual that came with the first espresso maker because the display model had been removed from its box and packaging. Carmen read the Espresso Maker's operating manual from cover-to-cover and followed all safety policies set forth in the manual when he used the Espresso Maker.

On or about the morning of April 1, 2013, Carmen made a latte with the Espresso Maker without issue. Carmen claims he was in the process of making a second latte when the Espresso Maker malfunctioned and began spraying him with high pressure steam and water. Carmen sustained second and third degree burns to his left hand and chest, and first degree burns to the left side of his face.

The incident allegedly occurred when Carmen attempted to attach the portafilter to the Espresso Maker. Carmen testified that he "went to install the portafilter into the machine. At that point, it's very unclear. I remember --- I remember falling backwards, and that was pretty much the extent of what I remember until the policeman did the safety check the following day." Depo. of Carmen at 88. (Dkt. 64-5 at 23.) Although Carmen does not recall specifically how his burns occurred, he concluded, from the way he ended up with his burns, that the Espresso Maker began to spray from the area around the portafilter as he put the portafilter up to the machine. Depo. of Carmen at 90-94. (Dkt. 64-5 at 24-25.)

On April 2, 2013, the day after the incident occurred, Carmen was found on the floor of his living room by Boise Police Department officers. The officers responded to

**REPORT AND RECOMMENDATION  - 5**

Carmen's home because Carmen's employer requested that a welfare check be conducted. Carmen had not shown up for work for two days, and his employer was aware of his medical conditions.[4] The police officers found Carmen laying in his living room with a blanket over him and no pants on. The officers noted also that Carmen's stove and the Espresso Maker were on when they arrived.

Carmen was transported to Saint Alphonsus Regional Medical Center, where he presented with left sided burns (primarily to his left hand), severe dehydration, mild acute renal failure and acute grade 1-2 encephalopathy. Carmen received medical treatment at Saint Alphonsus for four days. He was then transferred to Harborview Medical Center's Burn Unit in Seattle, Washington. Carmen's left hand was eventually amputated on June 9, 2014.

On October 8, 2014, Carmen posted a review of the Espresso Maker on Amazon, which stated:

> I purchased my machine a little over a a [sic] year ago and about two weeks later a crack opened in one of the castings and sprayed my left hand with scolding steam requiring a two month hospital stay and eventually after a year of intense therapy, my hand was amputated. Brevilles [sic] response? Stonewall. So the long process of trying get proper prosthetics, compensated for a lost job and living on peanut butter and SSDI has begun. I could never recommend a Breville machine. Ever[.]

---

[4] Prior to the incident at issue in this case, Carmen was diagnosed with a form of Lupus and suffered from syncope and orthostatic hypotension, which caused him to become confused, disoriented, faint and/or fall down. Depo. of Carmen at 150-153. (Dkt. 64-5 at 39.)

**REPORT AND RECOMMENDATION  - 6**

(Dkt. 64-9.) When Carmen was asked about the crack that he referenced in his Amazon review during his deposition, he testified that he never found a crack on the Espresso Maker.

Prior to filing his complaint in this action, Carmen took the Espresso Maker to Espresso Repair Experts in Seattle, Washington, for an inspection to determine whether it was defective. Carmen videotaped the inspection, which was conducted by an Espresso Repair Experts' technician. Carmen and the technician were the only people at the inspection. The Espresso Repair Experts' technician did not find any defects with the Espresso Maker. The technician stated that the Espresso Maker "does appear to be working as designed." Aff. of Evett, Ex. G. (Dkt. 64-10.) Carmen testified during his deposition that he does not have any knowledge of a manufacturing defect related to the Espresso Maker. Depo. of Carmen at 130-133. (Dkt. 64-5 at 34.)

Carmen asserted seven claims against Breville that are based on products liability legal theories: (1) Strict Liability—Design Defects; (2) Strict Liability—Manufacturing Defects; (3) Strict Liability—Failure to Warn; (4) Breach of Express Warranty; (5) Breach of Implied Warranty of Merchantability; (6) Breach of Warranty of Fitness for a Particular Purpose; and (7) Negligence. (Second Am. Compl., Dkt. 18.) He seeks compensatory damages and past and future lost wages. Breville moved for summary judgment in its favor on all claims asserted against it, claiming Carmen has not identified a defect related to the Espresso Maker and has not provided admissible evidence to establish a defect.

**REPORT AND RECOMMENDATION  - 7**

Carmen does not refute the facts set forth by Breville, other than to claim that they are "perjurious." In what the Court has deemed his response to the motion, Carmen submitted an engineering report, prepared by Selkirk Design, LLC, whom he hired to "document the operation and create a functional description of the fluid flow and control of fluid heating of the Breville ESXL800." (Dkt. 80-1 at 2.) However, Selkirk Design did not conduct the analysis on the Espresso Maker Carmen had purchased and claimed malfunctioned. Rather, a "surrogate espresso maker was purchased used from the internet…of the same approximate vintage of the machine in question…." Selkirk Design noted that the Breville ESXL800 had been discontinued, and replaced by the ESXL810 model. The analysis was completed on January 24, 2018. Carmen submitted no other documents responsive to Breville's motion.

## ANALYSIS

### 1.      Summary Judgment Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (citation omitted). In considering a motion for summary judgment, this Court must "view[ ] the facts in the non-moving party's favor." *Id*. To defeat a motion for summary judgment, the respondent need only present evidence upon which "a reasonable juror drawing all inferences in favor of the respondent could return a verdict in [his or her] favor." *Id*. (citation omitted).

**REPORT AND RECOMMENDATION  - 8**

Accordingly, this Court must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The respondent cannot simply rely on an unsworn affidavit or the pleadings to defeat a motion for summary judgment; rather the respondent must set forth the "specific facts," supported by evidence, with "reasonable particularity" that precludes summary judgment. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

## 2.      Strict Liability and Negligence Claims

Breville argues Carmen cannot prevail on his strict liability claims for manufacturing and design defect, or his negligence claim, because he cannot provide sufficient evidence to establish that the Espresso Maker was defective and proximately caused his injuries. Breville asserts Carmen's circumstantial evidence is insufficient, and that Carmen's admitted lack of knowledge as to how the injuries occurred preclude a finding that the Espresso Maker caused his injuries.

When a cause of action is "based on warranty, negligence or strict products liability, plaintiff has the burden of alleging and proving that 1) he was injured by the product; 2) the injury was the result of a defective or unsafe product; and 3) the defect existed when the product left the control of the manufacturer." *Farmer v. Int'l Harvester Co.*, 553 P.2d 1306, 1310–11 (Idaho 1976). the term 'defect' is not susceptible of a general definition but must be considered on a case by case basis. *Farmer*, 553 P.2d at 1311. The Idaho Supreme Court has referenced the definition set forth in the Restatement (Second) of Torts, § 402A (comment g 1965) as follows:

**REPORT AND RECOMMENDATION  - 9**

> 'Defective condition. The rule stated in this Section applies
> only where the product is, at the time it leaves the seller's
> hands, in a condition not contemplated by the ultimate
> consumer, which will be unreasonably dangerous to him.'
> Comment i to § 402A defines 'Unreasonably dangerous * * *
> the article must be dangerous to an extent beyond that which
> would be contemplated by the ordinary consumer who
> purchases it, with the ordinary knowledge common to the
> community as to its characteristics.' Prosser, Torts § 99 (4th
> ed. 1971) at p. 659 states 'the prevailing interpretation of
> 'defective' is that the product does not meet the reasonable
> expectations of the ordinary consumer as to its safety.'

*Id.*

A prima facia case may be established by direct or circumstantial evidence of a malfunction of the product and the absence of evidence of abnormal use, together with the absence of reasonable secondary causes which would eliminate liability of the defendant. *Id.* Proof of a malfunction is circumstantial evidence of a defect in a product, because a product will not ordinarily malfunction within the reasonable contemplation of a consumer in the absence of a defect. *Farmer* at 1312. There must also be proof that the event is not caused by any abnormal use to which the product had been put by the user, supporting the inference that the malfunction of the product is due to the defect alone. *Id.* Also related is evidence which tends to eliminate reasonable secondary causes. *Id.* A plaintiff need not exclude every possible cause but only reasonably likely causes. *Id.* at 1313. However, a plaintiff will not carry his burden of proof by merely proving the fact of the occurrence of an accident. *Id.*

One additional aspect of a plaintiff's prima facia case is the requirement that he prove the defect in the product rendered it "unreasonably dangerous." *Id.* (citing

**REPORT AND RECOMMENDATION  - 10**

RESTATEMENT (SECOND) OF TORTS § 402A, Comment i (1965)). "Ordinarily, the

evidence indicating the presence of the defect in the product or permitting its inference

under all the circumstances will also prove or permits the inference to be drawn that the

defective condition of the product made it unreasonably dangerous." *Id.*

With these principles in mind, the Court turns to the proof of facts viewed in the

light most favorable to Carmen. First, Carmen has not presented facts that the Espresso

Maker caused his injuries. Carmen has no recall of the actual incident. Instead, he

surmised based upon the nature of his injuries and the last event he recalls – making a

latte – that the Espresso Maker was the cause of his burns. But the mere fact of Carmen's

injury, by itself, does not does not rise to the level of evidence to support an inference

that the Espresso Maker caused his injuries.

Next, Carmen has not presented facts establishing the Espresso Maker was

defective in its design or manufacture. Carmen testified he had no knowledge of a

manufacturing defect in the Espresso Maker. Carmen provided no testimony, expert or

otherwise, that the Espresso Maker was defective when it was sold to him, and no

evidence that it was in any way defective after the incident.[5] Rather, the evidence

presented by Breville indicates that the Espresso Maker was examined by Espresso

Repair Experts, whose technician indicated the Espresso Maker was in good working

order. Carmen's only evidence of defect are his injuries, which are insufficient on their

---

[5] The Selkirk Engineering expert did not examine the Espresso Maker purchased by Carmen Accordingly, the conclusions reached in the report are not admissible to prove the Espresso Maker was defective. The only expert to have examined the Espresso Maker---the technician at Espresso Repair Experts---concluded it was functioning properly.

**REPORT AND RECOMMENDATION - 11**

own to establish a defect. There are no facts presented to show a defect in the Espresso

Espresso Maker caused it to spray scalding water. *See Edwards v. Conchemco, Inc.*, 727

P.2d 1279, 1281 (Idaho Ct. App. 1986) ("[T]o withstand a motion for summary

judgment, the plaintiff's case must be anchored in something more solid than

speculation.").

Last, Carmen has not established the "absence of evidence of reasonable

secondary causes" of the accident. When police arrived, Carmen's stove was on, a

possible alternative source of his injuries. Carmen suffered also from medical conditions

(syncope and Lupus) that could have caused him to lose consciousness, make him

confused, or disoriented. And, Carmen has no recall of events from the moment he lost

consciousness, until police found him the following day. Between that span of time, some

other accident could have occurred.

Carmen has not satisfied his burden upon summary judgment to establish a defect

existed in the Espresso Maker, or that the Espresso Maker caused his injuries. *See*

*Edwards*, 727 P.2d at 1282 (Idaho Ct. App. 1986) (affirming lower court's granting of

summary judgment when plaintiff failed to present any facts or circumstances to support

a reasonable inference indicating defendants were liable). Accordingly, the Court will

recommend that Carmen's strict liability claims for design defect and manufacturing

defect, as well as his negligence claims, be dismissed.

3.      **Strict Liability – Failure to Warn**

A manufacturer has a duty to "exercise reasonable care to warn [customers] of...

facts which make [its] product likely to be dangerous" if the manufacturer "knows or has

**REPORT AND RECOMMENDATION  - 12**

reason to know that the product is likely to be unsafe when used for the purpose for which it is supplied." *Robinson v. Williamson Idaho Equip. Co*., 498 P.2d 1292, 1298 (Idaho 1973); *see also* RESTATEMENT (SECOND) OF TORTS § 388 (providing that a supplier of a product who "knows or has reason to know that the [product] is or is likely to be dangerous for the use for which it is supplied," "has no reason to believe that those for whose use the [product] is supplied will realize its dangerous condition," and "fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous," will be subject to liability). The duty to warn "extends to risks of danger which arise during the known or foreseeable use of the product." *Robinson*, 498 P.2d at 1299–1300; *see also Puckett v. Oakfabco, Inc*., 132 Idaho 816, 979 P.2d 1174, 1181 (Idaho 1999) (explaining that a product is defective if "the defendant has reason to anticipate that danger may result from a particular use of his product and fails to give adequate warnings of such danger") (citation and internal quotation mark omitted); *Goehring v. Target*, 91 F. App'x 1, 5 (9th Cir. 2004) (The duty to warn extends to foreseeable risks of danger which arise during all anticipated uses of a product).

"Failure to warn can be a basis for recovery in a products liability action, whether alleged under a theory of strict liability in tort or negligence." *Puckett*, 979 P.2d at 1181 (citations omitted). "A product is defective if the defendant has reason to anticipate that danger may result from a particular use of his product and fails to give adequate warnings of such danger." *Id*. (citations and quotations omitted). "The purpose of imposing upon a manufacturer the duty to warn is to reduce the risk of injury associated with a product." *Id*. (discussing a negligent design products liability case and the doctrine of open and

REPORT AND RECOMMENDATION  - 13

obvious dangers and the duty to warn). "Where warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous." RESTATEMENT (SECOND) OF TORTS § 402A (1965).

Breville argues Carmen has not provided admissible evidence to establish Breville knew or had reason to know that the Espresso Maker would likely be unsafe when used for the purpose which it was intended. Here, the purpose of the machine was to make coffee. Carmen does not dispute he read the Espresso Maker's operating manual from cover-to-cover and followed all safety policies set forth in the manual when he used the Espresso Maker. The product manual contained instructions advising consumers to ensure the portafilter was firmly inserted, not to remove the portafilter during brewing operation, not to touch hot surfaces, and to allow the machine to cool down before cleaning any parts. (Dkt. 64-7.) Carmen testified that he had prepared lattes before using the Espresso Maker without incident, and had owned an espresso maker by another manufacturer for twelve years prior to the accident. And, Espresso Repair Experts was unable to identify any defect with the Espresso Maker.

Here, Carmen has not carried his burden to introduce facts demonstrating that the spraying of hot water from the area around the portafilter was a foreseeable risk Breville should have warned consumers about. *See Goehring*, 91 F.App'x at 6 (consumers injured by a fire after lighting a cigarette near an odorless, but leaking, propane gas cylinder introduced examples that the danger of odor fade was well known). Absent any genuine

issues of fact, the Court will recommend summary judgment be granted to Breville on the claim of failure to warn.

**4.      Warranty Claims**

Carmen alleges breach of express warranty, breach of implied warranty of merchantability, and breach of warranty of fitness for a particular purpose. The warranty claims here appear to be products liability claims sounding in tort, which are essentially the same as strict liability allegations. *See Oats v. Nissan Motor Corp. in U.S.A.*, 879 P.2d 1095 (1994) (citing RESTATEMENT (SECOND) OF TORTS § 402A (1965)). As set forth above, such claims require proof of an injury, caused by a defective or unsafe product, and the defect must have existed when the product left the control of the manufacturer. *Farmer*, 553 P.2d at 1310.

Breville argues that, absent evidence sufficient to establish a defect in the Espresso Maker, Carmen's warranty claims fail as a matter of law. The Court concluded above that Carmen had failed to present evidence sufficient to establish specific defects in the Espresso Maker, or that his injuries were caused by the Espresso Maker. Accordingly, Carmen has not met his burden of proof upon summary judgment.

Additionally, one of the elements necessary to prove breach of an implied warranty of fitness for a particular purpose is the reliance by the plaintiff as buyer upon the skill or judgment of the seller to select suitable goods. *Id.* Here, Carmen has not presented evidence that he relied upon the judgment or skill of anyone other than himself to select the particular Breville espresso maker he selected. Carmen testified he had long had an espresso maker, and he decided to purchase a new one. Such facts "lead

**REPORT AND RECOMMENDATION  - 15**

reasonably to the conclusion that [Carmen] did not rely upon the seller to select the [Espresso Maker]." *Id.* Accordingly, Carmen has not produced evidence to establish reliance, and therefore his implied warranty claim fails as a matter of law on this alternative basis.

## CONCLUSION

Based upon the foregoing analysis, the Court will recommend that Breville's motion for summary judgment be granted, and the claims brought against Breville be dismissed. Carmen has failed to set forth facts demonstrating a genuine dispute for trial, and Breville has shown that it is entitled to judgment as a matter of law with regard to all claims asserted against it.

## ORDER

## NOW THEREFORE IT IS HEREBY ORDERED:

1)      Plaintiff's Motion for Extension of Time (Dkt. 79) is **DENIED**.


DATED: June 20, 2018

_____

Honorable Candy W. Dale
United States Magistrate Judge


## RECOMMENDATION

## NOW THEREFORE IT IS HEREBY RECOMMENDED:

1)      Defendants' Motion for Summary Judgment (Dkt. 64) be **GRANTED**.

Written objections to this Report and Recommendation must be filed within fourteen (14) days pursuant to 28 U.S.C. § 636(b)(1) and Dist. Idaho L. Rule 72.1(b), or as a result of failing to do so, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.


DATED: June 20, 2018

_____

Honorable Candy W. Dale
United States Magistrate Judge